Good morning, I'm Lawrence Padway representing Glenn Logan. I think as we look at the ERISA litigation, it's remarkable for the manner in which it has proceeded in an ad hoc fashion when it seems that most other areas of law proceed with the development of rules. If you compare the ERISA cases to the Social Security cases, we find over the years that the courts have developed rules to help in the analysis of the cases. There are certain rules regarding how you treat the plaintiff's testimony. In ERISA litigation, it seems that the plaintiff, who would seem to be the most knowledgeable person about whether or not they can work, that his testimony is pretty much just discredited. And if you look at how the doctors are treated, in the Social Security litigation, of course, we have a treating physician rule, which we don't have in ERISA, but that doesn't mean that the choice is that you flip a coin to decide which doctor to believe. And as you look at some of these cases, you'd almost have to think that that's what's going on, because there's no analysis of which doctor had the most recent data, which doctor looked at the films, which doctor had access to all the records. And I think if you look at the findings in this case, and I think that if there had been better analysis of the two key facts, we probably wouldn't be here today. The first question is whether or not Mr. Lobin could travel. And the second question is whether or not that was a requirement of his job. Well, his boss sent a letter that said he's a road warrior. Against that, we have a telephone message, or a scrap of a telephone message, from somebody who is not identified by name, title, you know, it's somebody who says, I don't really know what his job duties are, but I think he works out of this house. Well, and the boss kind of explained that, because the boss said we gave him a period of time to work out of his house to see if not traveling would make his back better, and it didn't. So I think if you had a careful analysis of those facts, instead of a one-line finding that says, well, you know, maybe he can travel or maybe he can't. One question that bothered me in going over the briefs on this travel business. Certainly your client would have records of the travels that he had made for the company, and I don't understand why that kind of information wasn't either presented, or at least presented to the district court in some fashion, more than just a statement of his former supervisor. Yes. And if the insurance company had said, we don't consider the statement of your former supervisor to be sufficient, here's what we want to see, then I think that's a very legitimate question. Well, did you ask the district court when the issue came up for permission to have some additional information? Because it seemed to me if he was traveling, and I assume his company would have to pay for his travels, that that should have been a matter of record. Absolutely. And I think this is one of the issues that we have here, because most people, if they're trying to establish that they travel, and you're filling out your insurance claim, and you say, well, okay, I travel, that's one of the things I do on my job, and so I tell them, I travel. I'm on the road 75, 80% of the time. They ask me, I told them. Maybe they're not going to believe me. Here's a letter from my boss. Well, you haven't answered my question. I know your letter from the boss was there. I want to know why you never offered evidence of his actual travels. Because when the record was being compiled with the insurance company, there seemed to be a sufficient record of it, and the insurance company didn't say we're rejecting the boss's statement. When it got to the district court, the usual rule in these cases is that you're not allowed to add to the record. But you can. Yes. And in this case, there were matters added to the record. There were. And if at the district, if I would think going into the district court, I have an administrative record that says, here's a letter from the boss that says he travels all the time, and they have a scrap of a telephone call from somebody who doesn't have a last name, doesn't have a title, says I don't know what his job duties are. I don't think I have to add to that. It's until there's some reason to discredit the boss. Why would I think I would need to go to that next step? We're litigating the question of does your client need to travel for his job or not, and that's a matter that could have easily been solved by both sides. That's back at the administrative level. Now we're faced with your one letter and a scrap of a phone call to resolve the issue, which probably is pivotal in the case. Right. And I think that's the problem when there aren't any rules to govern. No, but counsel judgment usually controls that kind of thing, don't you think? I'm sorry? Judgment of counsel usually controls that kind of thing, don't you think? I think it does in the first instance, and I think that it would be a very odd individual who would think that you wouldn't have solved that with a letter from the boss. I mean, maybe I'm missing something, but the two people who know the most about travel and job duties are the employee and his boss. Well, let me ask you this. I think that's a very, it's a pivotal question, because even the doctor for the insurance company seems to indicate that if extensive travel is involved, his opinion would not be that he could go back to work. And so I want to ask you, what do you want us to do with this case? I think the best thing to do with this case is to try to start formulating some rules for ERISA cases on what it's going to take. Well, I don't want, I'm not talking about an 18 ERISA case. What do you want us to do with this case and this record and the findings which the district court made, which we have to determine in order to decide in your favor, for the most part, are clearly not going to work. It's clearly erroneous. I think that, and I think it was the Seventh Circuit that said, if it smells like a dead fish, it's clearly erroneous. Well, I wish you'd answer my question. Tell me, Judge Breit, here's what I think you ought to do. I think you should reverse, and I think you should say, and the instruction should be, that on this record, there is not going to work. There's no reason to discredit the boss's statement, and therefore, that has to be credited. Does an appellate court, in your experience, usually make credibility determinations? No. However, there are cases where it can only be decided in one way. The boss didn't testify. There's no oral testimony here, so we're talking about what is sufficient on a documentary basis. Go ahead with your statement. You were answering and you were suggesting that we would make the credibility determination, and that seemed a little unusual to me. Okay. Well, and I think that on this record, the boss's statement is made by somebody who has the knowledge, and there's no reason to discredit. Everything in this record says this gentleman lives in California and works mostly in Kansas, which certainly would imply some travel, and I don't think you can discredit the boss's statement by a scrap of a telephone call from somebody who says, I don't know what his job duties are, and somebody who doesn't have a name. That doesn't rise to the level of substantial evidence, and the trial court didn't say that it did. What the trial court did is the trial court said, well, I'm not saying that Prudential was unreasonable in making this finding, as if the trial court was deferring to Prudential, which would be inappropriate, because this is a de novo review. But in any event, I think this is, from that standpoint, a very simple case that the undisputed, uncontradicted, well, that the statement of the boss, who has the knowledge, who's taken the time to write it up in a formal manner, has to control over the scrap of a telephone message or an instant message or whatever it was by somebody who doesn't even have a last name. Can I ask you a question, ask your reaction to it? I suppose we would determine that the record is not complete enough on the travel, and remand it for additional findings. From your knowledge, can you produce additional findings to demonstrate without question that your client was doing a lot of traveling in the period prior to his claiming disability? Yes, if we're provided to supplement the record. You could do that. Counsel, I think we have your argument in hand. Why don't you save some time for a vote? Good morning, Your Honors. Adrian Publicover and Turin Higbee on behalf of Prudential. Do you have a time division in mind? I'm sorry, what? Do you have a division of time in mind? No, Your Honor. I am going to address the basic points raised in Mr. Padway's argument. Okay. The issue of whether or not travel was a material and substantial duty of Mr. Loban's occupation was a pivotal issue in this case. And a reading of the pretrial transcript indicates that that was the basis on which the primary basis on which the summary judgment was denied, that there was a triable issue of fact there, and Judge Armstrong at that time indicated that she would conduct a very thorough analysis of this particular issue, requesting that the attorneys come prepared to argue that specifics. And the information that was presented to the court during the trial was basically the administrative record with the addition of some declarations. The trial court allowed the parties to bring in any evidence that they wanted to. We were allowed to call witnesses, provide declarations, submit documentation. The trial court made it very clear that in conducting its de novo review that it was going to go above and beyond and outside the administrative record in this case. Well, what happened, if I understand the law, because the trial court adopted the findings presented by Prudential's trial lawyers. Did you try this case? Yes, Your Honor. And your findings were, in essence, adopted by the trial court, as I understand it. In part, Your Honor. With very minor exceptions. There were changes to, I believe, four conclusions of law and one finding of fact. There were alterations, too. As part of the pretrial order, both parties were required to submit. I understand that. But the point is, with that kind of arrangement, we have to make a very searching examination of the record, which we should do anyway, in any case. But what bothers me primarily is on the travel. I don't think it was fully developed by either side, and I can't understand why there wasn't more detailed information by the plaintiff and why there wasn't more than the scrap information by the defendant. I just don't understand that the company should have known, and Prudential should have been able to get all the records on travel. Your Honor, we would submit that from Prudential's perspective, the record was fully developed. First of all, the issue is not, as articulated in Appellant's brief, of own occupation. The issue is regular occupation, not how his occupation is normally performed, not for a specific employer who happens to be located 2,500 miles across the country or at a specific location. It is regular occupation. Mr. Loban was involved in sales, and he had advised the company that he had located a job within California that presumably would not require travel, but he ended up not taking that job. In addition, Your Honor, what we have is that he was in California, and the company is in Ohio, am I right? Yes, Your Honor. And he'd have to travel to company headquarters, would he not? That is exactly correct, Your Honor. And he did that, didn't he? We believe he did at some point in time, but then it later became, it later was, the company was apprised that that component of Mr. Loban's business had changed, because the company was going through some changes. Exactly. And he was about to be fired. Exactly. Yeah, but the fact of the matter is that what the trial court looked at was a very narrow area of time, which was from the time he claimed disability to the time of the trial, and his position was to be determined, as I understand it, from the previous time. Am I wrong on that? No, that is correct, Your Honor. They took in, the company solicited and reviewed all information received from the employer on the issue of travel. And what the company received was not simply a voicemail from one individual. There was a telephone call, the call that has been discussed, from an individual named Sandy, that indicated that travel was not a material duty of his occupation. That individual, Sandy, was not some random person. That was the person who signed and submitted the employer's statement to the company. That is why the company contacted her for information about Mr. Loban's travel requirements. There also was a written job description that was provided to the company in connection with Mr. Loban's claim, that again was reviewed and considered and mentioned nothing about travel. The third factor that was considered was the fact that he was working for an Ohio corporation and was traveling because his company was located out of state. But again, it's not an own occupation standard, it's a regular occupation standard. Let me put another question to you that's very bothersome to you. This man has a very bad back. I think everybody agrees with that. The degree may be a matter of dispute. But the company determined that he was suffering from at least short-term disability. Isn't that right? What the company determined was the information that was submitted during the claim was that Mr. Loban was going to have surgery. It was scheduled for a date certain. But at that point, because he was going to have surgery, and because of the record, the company determined he was disabled. Am I correct? No, but they were paying him disability payments before he had the surgery. Isn't that right? That is correct, Your Honor. Now, you know, with a back situation, there's a lot of dispute out there in the medical world as to whether or not surgery or conservative treatments are any better. And so this man decided not to have surgery. Maybe it was a wise decision, too. But then the company refused to pay further. But his physical condition had not changed at all. What do you say to that? First, Your Honor, the company paid Mr. Loban short-term disability benefits based on an expectation that he would have surgery. Dr. Light's opinions, Dr. Light is the treating physician of Mr. Loban at that time. Dr. Light's opinions are equivocal. He indicated that the MRI results were mild to moderate. He indicated that he didn't understand why Mr. Loban was complaining of such pain, given the physical findings. Dr. Light was clear and unambiguous on one sole point, and that was that Mr. Loban must have this surgery, that it was absolutely necessary. I don't understand why that's significant, too, that he didn't have surgery, because many people elect to try to live with pain for a long time. And a lot of people who have back surgery wish they hadn't, because it's not precise. If you're doing fusions, it can have a lot of complications. And this guy's got problems all up and down his spine. There's just no doubt about it. Usually you have maybe one compression problem, but he's got retrolithesis, he's got compression, he's got problems in the thoracic, all the way down to the sacral area. I mean, there's just multiple problems with this guy. I mean, this is a bad back. There's no doubt about it. He can't travel, at least, you know, most of us have handled a lot of cases involving backs, and I would say the restriction on travel is probably reasonable. So my question to you is, why is it significant to you in denying benefits that he decided not to have the surgery? Why is that the central point you're making? Because based upon the totality of information in the record, including the opinions of Dr. Light, the opinions of Dr. Becker, who saw and examined Mr. Loban, who actually was the most recent physician who examined Mr. Loban, the determination was made by the company that he was not disabled from performing the material and substantial duties of his occupation. But what Dr. Becker said, and that's your consulting position, is that he would need reasonable accommodations if travel were a significant part of his job, right? Correct, Your Honor. Mr. Loban bore the burden of establishing that... I'm just talking about what the restrictions are. Basically, he did not sign off on saying this person can travel any time, any place, or there are no travel restrictions, which your consulting position said he's going to need an accommodation, right? Correct, but Mr. Loban did not establish that travel was a material and substantial duty of his regular occupation. What do we do with the Brandt letter? I mean, except for the Brandt letter, I think you have a good argument. But he says, basically, no, he did have to travel. And if you talk about sales and the regular occupation of sales, almost all sales involves travel. That is a letter written by a former employee of the company. It is not even on company letterhead. And the trial court weighed that letter against the information that had been presented to Prudential from a current employee of the company and made a factual determination that weighed in favor of upholding Prudential's decision. It's a clearly erroneous standard, and at most you have two permissible views of the evidence. There is not clear error sufficient to warrant reversal of the trial court's findings of fact. The trial court gave greater weight to Dr. Becker or equal weight. Will you explain that to me? Becker was your consultant. Prudential's consultant. Yes. The trial court gave equal weight. The trial court reviewed everything that was presented to her, including declarations from Dr. Light submitted at the time of trial. Would you agree that under Dr. Light's opinion, the plaintiff was entitled to disability payments? No, Your Honor, because Dr. Light's opinion never addressed any functional limitations of Mr. Loban. Dr. Light's opinion was Mr. Loban has a back condition and he requires surgery. But he never addressed the functionality of Mr. Loban, and that is why the company ---- I don't know what you mean by functionality. You know, with a back situation, you may have pretty good function, but if you have tremendous pain, and lots of people have a lot of pain and even good function, the crucial issue is the pain that's disabling, and pain often cannot be measured either by any instruments or otherwise. It's sometimes very subjective, I know. Your Honor, we would submit that in a disability analysis, the key question is really functionality. A person can have a myriad of conditions, of medical conditions, of objective, documented, verifiable medical conditions, but that doesn't mean that those medical conditions render them unable to perform the material and substantial duties of their regular occupation. And Dr. Light never opined that Mr. Loban was unable to perform the material and substantial duties of his regular occupation. You know what the difficulty is, and you won't get to come back after he talks, so maybe you want to clarify it if I'm mistaken. This decision was made on the basis of no need to travel, wasn't it, or was it? It was based upon the totality ---- That his usual occupation does not require travel. That his regular occupation ---- I want to use the right word, and if regular is the right word instead of usual, I'll use regular. So regular, whatever it is, wasn't the decision, didn't this decision turn on the fact that travel was not included in the equation? You can tell me yes or no. The decision of the trial court or the decision of Prudential? The decision of Prudential was initially, the claim was approved based on the understanding that Mr. Loban ---- Was going to have surgery, that's what, and he didn't have surgery. And so that's the fact, he didn't have surgery, that's what they approved him. But I'm asking you, how did you consider travel? Was travel a part of the equation as you looked at this case? I'm assuming no, so that you understand my position. That travel, significant travel was a material and substantial duty of his regular occupation. And that was the basis on which the decision was made, is that right? In part, Your Honor, yes. It was one of the factors that the company looked at in assessing what were the material and substantial duties of his occupation, whether or not travel was a component of that. And the answer was no, travel is not a component, is that right? Correct, Your Honor. Was there something in the record that the requirements for travel changed because this company was going to be bought out by somebody else? The company looked at Mr. Loban's occupation as those occupational duties were presented to Prudential. And the job description was the job description, and presumably it was the job description for all time. Not that there had been special accommodations. Was there a written job description? Yes, Your Honor, that is at excerpt of the record 236. Would you just tell me what it said, you know, roughly? It says strong computer skills, verbal skills, direct liaison with corporate, deal with client issues, create, produce, review and distribute reports, responsible for staying within budget restrictions. And the knowledge and skills were very strong computer skills, proficient with Internet and e-mail, must have strong interpersonal skills. Interpersonal. That would mean, in sales, interpersonal means I assume that you've got to go out and sell the product. But it may mean something else, too, I suppose. What do you make of that interpersonal skills? I make it communication. Okay. So on the travel issue, what the plaintiff tendered was the letter from Brandt, who was his direct supervisor, right, former. Former supervisor. Right. And there's a telephone log indicating that he travels to Ohio four times a year but travels the rest of the year all over the States, right? Correct, Your Honor. And on your side, there's the memo from Sandy who says that he doesn't travel that much. Correct, Your Honor. Is that the state of the record on that issue? There is also the written job description from the employer that we just discussed, an excerpt of the record, 236 and 237. There is also the statements from Mr. Loban himself indicating that he had an opportunity to take a job with a California company that presumably would not have required the travel to Ohio. Now, was that a recent opportunity during the time he was having his back trouble? Yes, Your Honor. It was during the course of the pending review of the claim. Why is that significant? I mean, as to whether or not he could, whether his present job required travel or not. It might go to the issue of whether or not he was disabled. I'm sorry to interrupt, but I want to finish the question. But why does it bear on the question of whether he was required to travel on this job? It goes to the issue, very key issue, of regular occupation versus own occupation. And that the contract at issue provides disability benefits only in the event the individual is unable to perform the material and substantial duties of their regular occupation. That as normally performed in the job market, not for a specific employer or at a specific location. One question on that. Is this unable to perform his job? Is that limited in how much coverage there is? Is it 24 months of disability payments? And that's really what's involved in this case, isn't it? Yes, Your Honor. If you have two minutes left, you can use it any way you want to, or you can submit. Your Honor, we would submit that the issues presented before the court raise nothing more than factual disagreements. Factual disagreements on which there was evidence presented before the trial court. Mr. Loban carried the burden at that time, and he carries the burden now. The trial court conducted a very thorough and exhaustive review of all of the information that was presented to her, including information outside the administrative record, that the trial court's decision now as it stands can only be overturned if there is clear error. And really what is presented on this appeal at most is two permissible views of the facts. And under those circumstances, the decision must be affirmed. Thank you, counsel. Thank you very much. Rebuttal. I think there's only one or two things that I would like to respond to, unless there are some questions. The job description. Before you start, are you satisfied that that's where the state of the evidence is before us on the travel issue? They've got the job description. They have the telephone call, and they have, in terms of the issue of regular occupation, his turning down of the other job. And you have the Brant letter and a telephone call that indicates he travels. Is that the state of the evidence? Almost. The job which he turned down or didn't get, the record isn't clear on what happened there, but was not in the same occupation. As described by Mr. Lobin, who has the only description of it, it was in a similar occupation. So I'm not sure that that matters too much. The other item is on the job description, which says, the preceding job description has been designed to indicate the general nature and level of work performed by employees within this classification. It is not designed to contain or be interpreted as a comprehensive inventory of all duties, responsibilities, and qualifications required of employees. And if you look at the Brant letter, there were additional duties assigned, specifically the being tasked with developing new business and emerging markets. So I think with those kind of clarifications, oh, and I suppose there's one more, which is at page 33 of the record of the excerpts. The telephone call from Sandy states, employee rarely flies to Ohio, may have to drive for job, was unable to answer much else, not familiar with JDS, which I assume is job duties. Now, does that mean the witness wasn't familiar with it? Yes. Well, nobody testified, right? No, but the... This is the person who left the message. You submitted a letter, they submitted a phone log. Nobody testified live, although Mr. Brant was down in Napa and could have driven up for the hearing, right? Yes, and I think it's just the general custom in these cases not to have, is to do it on the record. But in any event, I think the fact that Sandy says she's not familiar with the job duties, anyway. So I think, and that's really all that I would have, unless there's... I want to have something else. Did you understand her summary of clothing statement? She said this case was decided on the facts, the evidence was before the court, there are two different versions, the court selected one, the case shouldn't be reversed. Did you understand it? She's saying the difference is he had a particular job that required him to travel, all right? But we're looking at his usual or his regular occupation. His regular occupation doesn't involve travel. And that's the decision that's made, and she thinks you're stuck with it. Let me address that, because the way that... You don't have to, but I'm asking if you want to. I will certainly think it would be prudent to address. The way in which Prudential described the regular occupation is they took a job description for an industrial plant manager. Which she isn't. I mean, I guess there's a long and short of it. The occupation that he was in, according to his boss, involved sales, overseeing new installations, and what they call emerging markets. That's an outside sales job, basically. So how Prudential can turn that into being an industrial plant manager, I don't know. But there certainly is no evidence that Mr. Loban's occupation can normally be done without travel. I think in terms of the evidence, the Court just choosing between different evidence, if you look at the findings, in particular the finding on travel... Let's see. You're looking at 13, perhaps? Yes. Thank you. It's in the excerpts of page 387, finding 13. Your argument is that she didn't make any independent findings based on the evidence, but she just relied on the administrative record that existed prior to that. She referred to Prudential. And that's the one factual finding that was changed by the Court. Because if you look at the way that Prudential had that in their proposed findings... Well, what do you make of the previous paragraph, 12? Well, he was working from home, and his travel requirements were limited, and Mr. Brandt explains that, that that was a temporary accommodation to see if it would get his back into business. And that's the only finding that was changed. It was changed from being a finding that the Court made on travel to deferring to Prudential. So your argument is that clear error doesn't apply to that because she's not making a factual finding? Yes. Number 12 certainly was a factual finding. Paragraph 12. Yes. But I think Mr. Brandt explains that that's a temporary accommodation to see if his back gets better, and that's at 207 of the record, and it didn't get it better. Okay. Thank you.
judges: Farris, Thomas, Bright